

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 23, 2020**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO:  20-43800-elm-11 |
| GL BRANDS, INC., F/K/A | § | |
| FREEDOM LEAF, INC. *et al.*[1] | § | CHAPTER 11 |
| Debtors. | § | (Joint Administered) |

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS; AND (5) GRANTING RELATED RELIEF**
**(Pertains to Docket No. 8 and 9)**

On December 16, 2020, GL Brands, Inc., f/k/a Freedom Leaf Inc., a Nevada corporation,

---

[1] As used herein, the term "Debtors" includes all jointly administered Debtors.  The Debtors are *GL Brands, Inc.*, Case No.20-43800; *The Texas Wellness Center, LLC*, Case No.20-43804; *ECS Labs, LLC*, Case No. 20-43806; *Leafceuticals, Inc.*, Case No. 20-43816, and *B & B Aesthetics Labs, LLC*, Case No. 20-43815.  All pleading and notices affecting any of the Debtors should be filed in the *GL Brands* case.

INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF -
Page | 1
DMS 496305

based in the Northern District of Texas ("GL Brands"), The Texas Wellness Center LLC ("TWC",

ECS Labs LLC, ("ECS") Leafceuticals, Inc. ("LCF"), and B & B Aesthetics Labs, LLC ("B &

B"), debtors-in-possession, (the "Debtors"), filed their voluntary Chapter 11 Petition, and their

Emergency Motion for Entry of Order (1) Authorizing Use of Cash Collateral; (2) Approving

Debtor in Possession Financing from the DIP Lender (as defined below); (3) Providing Adequate

Protection to the Interests of the Existing Secured Creditor (as defined below); (4) Granting to the

DIP Lender and authorizing the Debtors to incur the DIP Liens (as defined below) and allowed

super-priority administrative expense claims, and (5) Granting Related Relief [Docket Nos. 8 and

9] (the "Motion").

The Motion sought, among other relief, the entry an of Interim Order authorizing the

Debtors: (1) to use cash collateral for 14 days; (2) to borrow money for 14 days, both pursuant to

the terms of a DIP Financing Agreement and a 14 Day Budget; (3) to grant adequate protection to

the interests of the Existing Secured Creditor; (4) to grant to the DIP Lender and authorize the

Debtors to incur the DIP Liens and allowed super-priority administrative expense claims for the

use of cash collateral and the DIP Loan; and (5) for related relief, all pursuant to 11 U.S.C. §§ 105,

361, 362, 363(a) and (c), 364(c), 503(b), 507, and Federal Rules of Bankruptcy Procedure 4001(b),

(c), and (d).  Attached to the Motion were: (1) the proposed Interim Order; (2) the proposed Final

Order; and (3) the proposed DIP Financing Agreement with 14 Day Budget and (final) DIP Budget.

Due to the emergent need for the use of cash collateral and for authority to borrow, the Debtors

requested an expedited hearing on the Motion, which was granted.

On December 21, 2020, the Court held an expedited hearing (the "Hearing") to consider

the requested interim relief.  The Debtors appeared through counsel and presented documentary

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2)
APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE
PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO
THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED
SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF -
Page | 2**

evidence and the testimony of Brian Moon, the Debtors' Chief Financial Officer. The proposed DIP Lender, Merida Capital Partners III LP (in such capacity, the "DIP Lender") appeared through its counsel and announced its support for the Motion. The Court has reviewed the pleadings, including the proposed 14 Day Budget and the proposed DIP Financing Agreement (the "DIP Financing Agreement") and its docket in this matter. The Court has considered the testimony presented and the arguments of counsel. Good cause appearing, the Court makes the following findings of fact, conclusions, and decree:

## I.

## FINDING OF FACTS

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D), and (G). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

2.  The Debtors provided notice by email of the Hearing to the DIP Lender, the Existing Secured Creditor, the United States Trustee, and the Debtors' largest unsecured creditor. The Debtor has provided notice by First Class United States Mail to all other known creditors and parties in interest. The notice provided was adequate and reasonable under the exigent circumstances.

3.  The lead Debtor, GL Brands, Inc, filed its Chapter 11 voluntary petition in this Court on December 17, 2020. The other Debtors filed their cases on December 18, 2020 (collectively, the "Petition Dates"). The Debtors maintain possession of their property and management of their financial affairs as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. No creditors' committee has yet been formed.

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 3**
DMS 496305

4.      The Debtors' cases are now jointly administered with GL Brands as the lead Debtor.

5.      GL Brands is a Nevada corporation, formed on February 21, 2013. The Debtors formerly maintained their head office at 3939 Beltline Road Suite 350 in Addison, Texas. Due to COVID-19, and the need to conserve cash, the Debtors' senior management now works from home. The Debtors surrendered the leasehold in Addison and no longer occupy that location. Three (3) of the Debtors' senior officers, the CEO (Carlo Frias), the VP for Finance (Alexandro Frias), and the CFO (Brian Moon) live in Tarrant County. The Debtors' current mailing address is P.O. Box 470458, 3101 West 6th Street, Fort Worth, Texas 76107-9998.

6.      GL Brands is a public company that trades over the counter. The Debtors' current structure emerged on May 31, 2019, when Freedom Leaf Inc. closed the purchase of ECS Labs, LLC, a Texas limited liability company that wholly owns two (2) subsidiaries, B & B Labs, LLC, a Texas limited liability company, and Texas Wellness Center, LLC, a Texas limited liability company (collectively, the "Green Lotus Companies"). On November 20, 2019, Freedom Leaf Inc. changed its name to GL Brands, Inc., by merging with a newly created Nevada subsidiary, called GL Brands Name Change Subsidiary, Inc. GL Brands is now an audited, publicly reporting company traded under the symbol (OTC Pink: GRLB). The Debtors anticipate they will consolidate the corporate structure through their plan of reorganization.

7.      The Debtors collectively operate a single business enterprise that sells hemp-based dietary and health supplements, including tinctures, softgels, gummies, sparkling beverages, vapes, flowers, pre-rolls, and topical ointments to promote general wellness and balance. In the 2018 Farm Bill, Congress legalized the cultivation of hemp and the manufacture and sale of hemp

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 4**
DMS 496305

oil and CBD products provided that they did not contain more than 0.3 THC by dry weight. The Debtors' products do not contain more than 0.3 THC by dry weight. Accordingly, the Debtors represent that their products are fully lawful under applicable state and federal law. The Debtors believe that their products have a soothing or relaxing effect, and many customers use them for pain relief. However, the Debtors' products are not mind-altering. The Debtors' products are classified as supplements, not pharmaceuticals and they not regulated as pharmaceuticals. Because the Debtors' products are not classified as pharmaceuticals, the Debtors do not make specific health related claims about them.

8. The Debtors' premier brands are Green Lotus[TM] Hemp[2] and IrieCBD. Debtors' products are consumer packaged goods available in drug stores, health foods stores, and stores specializing in dietary supplements in the United States and Mexico. The Debtors also sell directly to retail customers through two (2) websites. The Debtors' products enjoy a good reputation for quality and compete in a growing market segment. The Debtors believe that their business has a bright future if it can survive in the short run. The Debtors filed this Chapter 11 to reorganize their financing affairs, convert debt to equity and de-leverage the balance sheet.

9. Three of the founders of the Green Lotus Companies, Carlos Frias, Ngoc Quang "Daniel" Nguyen, and Alexandro Frias (collectively, the "GL Founders"), and the founder of Freedom Leaf Inc., Clifford Perry, collectively own a majority of the shares and exercise control of the Debtors.

---

[2] CBD is cannabidiol, an oil extracted from the flowers, stems, and leave of the hemp plant. Hemp oil is extracted from the seeds of the hemp plant. The seeds are edible, and can be purchased in health food stores, but the Debtors' products are sold as nutritional supplements, not food items.

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 5**

10.    The Debtors' pre-petition capital structure is overleveraged and unsustainable, as described below.

11.    **Prepetition Founder Obligations**: The Court determines on a preliminary basis, subject to a final hearing, and subject to paragraph 9 of the Decree herein, that the Debtors owe the GL Founders substantial sums pursuant to their employment agreements and for other borrowed money, totaling more than $5 million.

12.    **Prepetition Unsecured Notes**: The Court determines on a preliminary basis, subject to a final hearing, and subject to paragraph 9 of the Decree herein, that the Debtors owe MCP Wellness II LP, an affiliate of Merida (as defined below), approximately $5,442,740 pursuant to an unsecured convertible note issued on November 18, 2019. The Debtors, except for LFC, owe Merida Capital Partners II LP and Merida Capital Partners III LP (collectively, "Merida"), also shareholders,[3] approximately $992,998 pursuant to a series of unsecured promissory notes issued in 2020.

13.    **Prepetition Secured Note**: The Court determines on a preliminary basis, subject to a final hearing, and subject to paragraph 9 of the Decree herein, that the Debtors, except for LFC, owe approximately $260,240 to Merida Capital Partners III LP (in such capacity, the "Existing Secured Creditor") pursuant to a secured promissory note issued in 2020, with such obligations secured by pre-petition liens on all assets of the Debtors (the "Prepetition Collateral"). The Existing Secured Creditor has filed UCC-1 financing statements to perfect its pre-petition

---

[3] Merida owns about 4% of the issued and outstanding capital stock of GL Brands. David Goldburg, a principal of Merida sits on the Debtors' Boards of Directors.

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 6**

liens. Accordingly, the Existing Secured Creditor asserts pre-petition liens on all of the Prepetition Collateral, including all cash collateral, which the Debtors have agreed not to contest. The Court therefore finds that the Existing Secured Creditor has an interest in cash collateral, pursuant to 11 U.S.C. §§ 363(a) and (c)(2), which is entitled to adequate protection for purposes of this Interim Order.

14.     Separate and apart from their overleveraged capital structure, the Debtors are running low on cash. Much of the Debtors' sales volume is derived from retails sales in brick and mortar store locations. The COVID-19 pandemic substantially reduced the Debtors' sales volume and accelerated the need for Chapter 11 relief. The Debtors owe approximately $450,000 to various lessors and trade creditors. The Debtors require cash to meet payroll obligations and related taxes, pay sales taxes, purchase inventory, and pay lessors and licensors of software. Unless permitted to borrow money, the Debtors will run out of cash before the end of December 2020. If the Debtors run out of cash, they will be forced to close, resulting in the loss of going concern value. Accordingly, the Debtors have an immediate need to use cash collateral and to borrow money to sustain their operations and pay the expenses of the reorganization.

15.     The Existing Secured Creditor is willing to permit use of its cash collateral, and the DIP Lender is willing to provide debtor in possession financing to the Debtors on commercially reasonable terms; provided that (i) the Existing Secured Creditor receives adequate protection, as and to the extent set forth in this Interim Order and the DIP Financing Agreement (as defined below), against the risk of any diminution in the value of its interests in the Prepetition Collateral, including but not limited to receiving replacement liens in the Prepetition Collateral, and (ii) the DIP Lender receives the protections typically given to DIP financers, such as a super-priority

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 7**

administrative claim for the use of cash collateral and post-petition advances and a post-petition lien on all assets to secure post-petition financing, each subject to a carve out (set forth below) for certain other administrative claims.  The Debtors, the Existing Secured Creditor and the DIP Lender have reached an agreement on the terms of the DIP Financing Agreement, which is attached to the Motion as Exhibit 1 thereto (the "DIP Financing Agreement").

16.     In connection with the DIP Financing Agreement, the Debtors, the Existing Secured Creditor and the DIP Lender have agreed to the terms of an interim fourteen 14 day budget (the "14 Day Budget") and final 13-week budget (the "DIP Budget"), for which Court approval is requested.  The DIP Budget runs through the week of March 14, 2021.  However, the DIP Financing Agreement allows for agreed extensions of the 13-week DIP Budget without further Order of the Court.  The DIP Budget will end, and the DIP Loan (as defined below) will mature on March 31, 2021, unless the Debtors file a plan of reorganization by that date, and on June 30, 2021, if a plan of reorganization is not confirmed by that date.  Such plan must provide that the DIP Obligations (as defined in the DIP Financing Agreement) will be repaid in full in cash or be otherwise acceptable to the DIP Lender.  Otherwise, the DIP Obligations will be become due and payable.

17.     Under the proposed terms of the DIP Financing Agreement, the Debtors propose to borrow, and the DIP Lender proposes to lend the Debtors up to $750,000 on a revolving basis in accordance with the 14 Day Budget and the DIP Budget (the "DIP Loan").  The Debtors will pay an initial 1% commitment fee of $7,500, which will be added to the principal balance.  The unpaid principal balance will bear interest at an annual rate of 15%, with a default rate of 17%.  The Debtors are required to pay the reasonable fees of the DIP Lender's counsel, which are included

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 8**
DMS 496305

in the 14 Day Budget and the DIP Budget. Counsel for the DIP Lender shall provide fee invoices to counsel for the Debtors, the U.S. Trustee, and counsel for the Unsecured Creditors Committee, if any, no less than 14 days before the Debtors shall be required to pay such fees, for review and any objection to reasonableness. Absent any objection to reasonableness, the Debtors will pay such fees in accordance with the DIP Financing Agreement. To the extent that such fees exceed the budgeted amounts, the excess shall not cause a variance from the DIP Budget.

18.     The Debtors will make an initial draw of $145,000 in the DIP Loan in the first week under this Interim Order. The Debtors will be required to pay "Excess Cash" (as defined in the DIP Financing Agreement) back to the DIP Lender at the end of each week to reduce the principal balance. Excess Cash is defined as any amount greater than $25,000, other than the amounts needed by the Debtor for the expenses set forth in the DIP Budget for a particular Budget Period and the immediately subsequent Budget Period, each of which lasts for one (1) week. Repayments of "Excess Cash" may be reborrowed in accordance with the DIP Budget.

19.     The DIP Financing Agreement provides a $75,000 carve-out (the "Carve-out") from the cash collateral for certain administrative expenses other than the DIP Loan and usage of cash collateral, such as the Court-approved fees and expenses of all estate professionals. In addition to the professional fees subject to the $75,000 limit, the Carve-out shall also include all statutorily required fees incurred under 28 U.S.C. § 1930(a)(6) ("UST Quarterly Fees"). The Debtors shall account for anticipated UST Quarterly Fees in the proposed Final Order and DIP Budget. The Carve-out is appropriate. For purposes of this Interim Order, the Court determines that the amount of the Carve-out is reasonable and adequate under the circumstances.

20.     Under the DIP Financing Agreement, and as proposed in the Motion, the Debtors,

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF -
Page | 9**
DMS 496305

except for LFC, agree to provide adequate protection to the Existing Secured Creditor's interest in cash collateral, and all Debtors (including LFC) agreed to provide collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all DIP Obligations (as defined in the DIP Financing Agreement) as follows: (a) the preservation and continued operation of the Debtors' business and going concern value; (b) a super-priority administrative claim to the DIP Lender for the use of cash collateral and the DIP Loan, each subject only to the Carve-out; (c), the granting to the DIP Lender of automatically perfected, first priority, post-petition liens on all assets of the Debtors, except for the Debtors' Chapter 5 avoidance actions and recoveries therefrom, if any, subject only to the Carve-out (the "DIP Liens") and the liens of any other secured creditors; (d) except for LFC, the granting to the Existing Secured Creditor of automatically perfected, first priority, post-petition replacement liens on all assets of the Debtors, subject only to the Carve-out and the DIP Liens, and, except for LFC, a super-priority administrative claim, junior only to the super-priority administrative claim of the DIP Loan and subject only to the Carve-out; and (e) the adherence by all Debtors to the 14 Day Budget and DIP Budget, subject to Permitted Variances, which are 10%.

21.     The Court finds that the Existing Secured Creditor's interest in cash collateral is adequately protected for the 14-day term of this Interim Order, subject to further review in a final hearing on the Motion.

22.     The Debtors, the Existing Secured Creditor, and the DIP Lender have negotiated the term of the DIP Financing Agreement in good faith, and the Motion was filed in good faith. The DIP Lender should be granted the protections of 11 U.S.C. § 364(d) for the 14-day period of this Interim Order.

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 10**
DMS 496305

23. The DIP Liens, the Existing Secured Creditor's pre-petition liens, and the post-petition replacement liens granted herein do not encumber the Debtors' Title 11, Chapter 5 cause of action for recovery of voidable transfers, if any, or the proceed thereof, if any.

24. The Debtors have attempted to find DIP financing from at least one other potential post-petition lender. Despite reasonable and diligent efforts, the Debtors were not able to find comparable DIP financing on more favorable terms.

25. The Court finds that the 14 Day Budget, attached hereto as Exhibit "A" is reasonable under the circumstances and include only categories and amount of expenditures of cash collateral necessary to prevent immediate and irreparable harm to the Debtors' estates for 14 days, pending a final hearing on the Motion. The Court does not approve the final DIP Budget at this time, pending a final hearing on the Motion, but the Court notes that the Debtors, the Existing Secured Creditor and the DIP Lender have agreed to the DIP Budget. Notwithstanding the 14 Day Budget or DIP Budget, Debtors may not pay estate professionals or pre-petition creditors without further orders from this Court specifically authorizing such payments.

## II.

### CONCLUSIONS OF LAW

A. Pursuant to 11 U.S.C. §§ 105, 362, 363(a), 363(c) and Federal Rule of Bankruptcy Procedure 4001(a) and (b), the Debtors should be authorized to use the Existing Secured Creditor's cash collateral for 14 days in accordance with the 14 Day Budget and under the terms and conditions set forth herein, pending a final hearing on the Motion.

B. Pursuant to 11 U.S.C. §§ 105, 362, 364(a), (b) and (c)(2) and Federal Rule of Bankruptcy Procedure 4001(c), the Debtors should be authorized to borrow, and the DIP Lender

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 11**
DMS 496305

should be authorized to lend the Debtors up to $145,000 for use in accordance with the 14 Day Budget and under the terms and conditions set forth herein, pending a final hearing on the Motion.

C.      The Existing Secured Creditor should be granted adequate protection for its interests as set forth in paragraph 20 above pending a final hearing on the Motion. In addition, the DIP Lender is entitled to the protections of 11 U.S.C. § 364(e) pending a final hearing on the Motion.

D.      Since the Existing Secured Creditor has conditionally consented to the Debtors' use of cash collateral, pursuant to 11 U.S.C. § 364(c)(2)(A), this Interim Order should not prohibit the Debtors' continued use of cash collateral after the expiration of 14 days, pending a final hearing, provided that: (1) the Debtors adhere to the agreed 14 Day Budget and DIP Budget within the Permitted Variances, as defined therein, and (2) neither the Existing Secured Creditor nor the DIP Lender withdraws its consent.

### III

### DECREE

Based upon the forgoing Findings of Fact and Conclusions of Law, it is therefore ORDERED that:

1.      The Motion is granted on an interim basis for 14 days, pending a final hearing;

2.      The 14 Day Budget is approved;

3.      The Carve-out is approved. For purposes of this Interim Order, the $75,000 amount of the Carve-out is also approved, but without prejudice to the right of parties in interest to argue for a higher amount in the Final Order;

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 12**
DMS 496305

4.    Pursuant to 11 U.S.C. §§ 361, 363(a) and (b), and Federal Rule of Bankruptcy Procedure 4001(b), the Debtors are authorized to use the Existing Secured Creditor's cash collateral for 14 days, for the purposes of, and in the amounts set forth in the attached 14 Day Budget;

5.    At the end of the 14 Day Budget period, if the Court has not yet held a final hearing on the Motion, the Debtors may continue to use cash collateral pursuant to the agreed DIP Budget, unless the Existing Secured Creditor or the DIP Lender withdraws such consent in writing;

6.    Pursuant to 11 U.S.C. §§ 362, 364(a), (c) and (b), and Federal Rule of Bankruptcy Procedure 4001(d), the Debtors are authorized to borrow and the DIP Lender is authorized to lend the Debtors up to $145,000, in accordance with the 14 Day Budget and the DIP Financing Agreement;

7.    The Existing Secured Creditor is hereby granted adequate protection of its interest in cash collateral as follows: (a) the preservation and continued operation of the Debtors' business and going concern value; (b) except as to LFC, the granting to the Existing Secured Creditor of automatically perfected, first priority, post-petition replacement liens on all assets of the Debtors, except for the Debtors' Chapter 5 avoidance actions and recoveries therefrom, if any, and subject only to the Carve-out and the DIP Liens; (c) except as to LFC, a super-priority administrative claim, junior only to the super-priority administrative claim of the DIP Loan and subject only to the Carve-out; and (d) the adherence by all Debtors' to the 14 Day Budget and DIP Budget, subject to Permitted Variances.

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 13**
DMS 496305

8.      The DIP Lender is hereby granted collateral security for the prompt and complete performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of all DIP Obligations (as defined in the DIP Financing Agreement) as follows: (a) a super-priority administrative claim, subject only to the Carve-out; and (b) the granting to the DIP Lender of the DIP Liens, subject only to the Carve-Out;

9.      The Debtors stipulate to the validity of the DIP Lender's pre-petition liens.  Subject only to entry of a Final Order, each party-in-interest is prohibited from challenging the validity, extent, priority or enforceability of the prepetition liens of the Existing Secured Creditor, unless such challenge is made, after any necessary Bankruptcy Court authorization for such challenge is granted, not later than 60 days after the commencement of the Debtors' Section 341(a) first meeting of creditors; subject to extension by the Court for cause, upon notice to the Debtors and the DIP Lender and Existing Secured Creditor, and a hearing;

10.     During the period of the Interim Order, no party-in-interest nor any other person may use the cash collateral to litigate with the Existing Secured Creditor with respect to or to challenge the validity, priority and extent, but not the value, of the Existing Secured Creditor's interest in the Prepetition Collateral;

11.     For the use of cash collateral and for advances made during the 14-day period of this Interim Order, the DIP Lender is granted the protections of 11 U.S.C. § 364(e);

**INTERIM ORDER: (1) APPROVING DEBTORS' USE OF CASH COLLATERAL FOR 14 DAYS; (2) APPROVING DEBTOR IN POSSESSION FINANCING FOR 14 DAYS; (3) PROVIDING ADEQUATE PROTECTION TO THE INTERESTS OF THE EXISTING SECURED CREDITOR; (4) GRANTING TO THE DIP LENDER AND AUTHORIZING THE DEBTORS TO INCUR THE DIP LIENS AND ALLOWED SUPER-PRIORITY ADMINISTRATIVE EXPENSE CLAIMS, AND (5) GRANTING RELATED RELIEF - Page | 14**
DMS 496305

12. The replacement liens and post-petition liens granted to the Existing Secured Creditor and the DIP Lender do not encumber the Debtors' Title 11, Chapter 5 causes of action, if any, or the proceeds thereof, if any;

13. The Court hereby sets a final hearing for consideration of the Motion and approval of the DIP Financing and the DIP Budget on January 6, 2021, at 9:30 A.M., in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth, Texas, in the Courtroom of the Honorable Edward Lee Morris. Such setting was announced in open Court. The Debtors shall file a Notice of Hearing no later than December 23, 2020; and

14. Pending a final hearing, the Court may modify or extend this Interim Order, after notice and hearing, or by the mutual agreement of the Debtors, the Existing Secured Creditor and the DIP Lender, presented as an agreed order.

\*\*\* END OF ORDER \*\*\*

| GL BRANDS | 14 Day Budget | |
|---|---|---|
| Week Commencing (Sunday) | Week 1 12/20/20 | Week 2 12/27/20 |
| Beginning Cash | 114 | 10,349 |
| Operating Cash Receipts | 5,000 | 16,710 |
| **Cash Disbursements** | | |
| Payroll: | | |
| Payroll & Benefits (PEO) (a) | (49,395) | |
| Contracted Employees | | |
| COVID-19 Employer SS Deferral Repayment | | |
| Total Payroll | (49,395) | - |
| COGS Expenses | | |
| Ingredients & Raw Materials | (32,500) | (143) |
| Other | - | (710) |
| Shipping/Outsourced Distribution Expenses | | (853) |
| Total COGS Expenses | (32,500) | |
| Occupancy Expenses: | | |
| Rent | | |
| RE Taxes | (4,434) | - |
| Utilities | (278) | |
| Warehouse Expenses | | - |
| Total Occupancy Expenses | (4,712) | - |
| Other Operating Expenses: | | |
| Insurance | (1,511) | (304) |
| Capital Leases, Storage | (761) | (1,784) |
| Software | (1,294) | |
| Marketing | (4,000) | |
| Sales Support | (5,000) | |
| Miscellaneous | (1,500) | |
| Total Other Operating Expenses | (14,066) | (2,088) |
| Net Operating Cash Flow | (95,673) | 13,769 |
| **Restructuring Costs:** | | |
| Legal Fees - GRLB Counsel | (2,000) | |
| Legal Fees - DIP Lender Counsel | | |
| Legal Fees - Bankruptcy Counsel | | |
| Legal & Professional Fees - CPA Taxes | | |
| Legal & Professional Fees - Misc. | | |
| US Trustee Fee | | |
| Total Restructuring Costs | (2,000) | - |
| Net Cash Flow Before Financing | (97,673) | 13,769 |
| **DIP Financing/Other:** | | |
| Borrowing/(Repayment) (b) | 145,000 | - |
| Catch Up AP (c) | (3,000) | |
| Taxes (d) | (34,092) | |
| Interest/Fees (e) | | |
| Total DIP Financing/Other | 107,908 | - |
| Net Cash Flow | 10,235 | 13,769 |
| Ending Cash | 10,349 | 24,118 |

Notes:
(a) Payroll tax rates have not yet been announced for 2021, so payroll numbers will change, but estimated to increase.
(b) DIP includes a cash sweep mechanism for any Week in which cash proceeds exceed $25k, with 100% of the excess amount used to repay the outstanding DIP loan balance.
(b) Includes critical vendors and pre-petition legal fees.
(d) Annual payment: sales tax and state fees/taxes.
(e) All DIP fees will accrue.

**EXHIBIT A**